771 F.2d 1432
 Ann JOHNSON, an Individual, Plaintiff-Appellant,
Vivian Johnson and Bedene Johnson, Plaintiffs-Intervenors-Appellants,
v.
Lewis MATLOCK, an Individual, Lewis Matlock and John Doe's 1
through 10 d/b/a Matlock Coal Company a/k/a Matlock & Sons
Trucking Company, and Matlock & Sons, Inc., an Idaho
corporation; and Linda Firkins as Personal Representative
of Estate of Steven Eugene Firkins, deceased, Defendants-Appellees.
 No. 83-1988.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 4, 1985.
 
 Greg S. Ericksen, Bountiful, Utah, for plaintiff-appellant, Ann johnson.
 Gary B. Ferguson (Robert G. Gilchrist with him on brief) of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for defendants-appellees.
 Before McKAY and McWILLIAMS, Circuit Judges, and BALDOCK, District Judge.*
 McKAY, Circuit Judge.
 
 
 1
 This case arises out of an automobile accident which occurred in rural Utah at a point where a state highway intersects a graveled county road, forming a "T". At the time of the accident a double yellow line painted on the state highway prohibited passing in the area immediately after the county road, and the road was visible to oncoming traffic for a distance of at least 1200 feet. There was a widening of the county road where it joined the state road, extending along the side of the state road to permit acceleration by automobiles turning from the county road onto the state road. The county road had a stop sign at the point where it joined the state road. A gate designed for animal control extended across the county road at a point not visible to traffic traveling on the state road. The evidence showed that such gates across public roads are common in rural Utah. Finally, the driver of the semi-truck was familiar with this stretch of road, having often taken this route.
 
 
 2
 The accident occurred at the juncture of the two roads. The semi-truck was following plaintiff's decedent in an easterly direction along the state road and attempted to pass plaintiff's vehicle at a point which would have made it impossible for the driver of the semi-truck to return to his own lane prior to violating the no-passing zone which commenced at the intersection. At the time of the accident plaintiff's decedent was attempting to make a left-hand turn off of the state road onto the county road. The expert analysis showed that decedent's brake lights were on at the time of the accident, and it could not be determined whether the decedent's signal light was on or off when the accident occurred.
 
 
 3
 At the close of the evidence plaintiff moved for a directed verdict on the issue of defendant's negligence. This motion was based on Utah Code Ann. Sec. 41-6-58(a)(2) (1953), which makes it unlawful to travel on the left side of the roadway when approaching within 100 feet of or traversing an intersection. The district court denied this motion and instructed the jury that it was to determine as a matter of fact based on all the evidence whether the juncture of the county road and the state highway constituted a statutory intersection for purposes of this section. The jury returned a verdict for defendant. Plaintiff appealed, challenging the district court's failure to direct a verdict on the issue of defendant's negligence and also challenging the district court's admission of certain reconstruction evidence that will be discussed hereafter.
 
 
 4
 The first issue is whether the district court erred in failing to conclude as a matter of law that the juncture of these two roads constituted a statutory intersection. Defendant asserts that the question of whether the juncture of two roads constitutes an intersection is a question of fact for the jury and therefore the district court did not err in submitting this issue to the jury for determination. In support of this argument defendant cites two Utah Supreme Court cases. In Douglas v. Gigandet, 8 Utah 2d 245, 332 P.2d 932 (1958), the Utah Supreme Court reversed and remanded the case for a new trial because of the trial court's erroneous conclusion that the accident had occurred at an intersection. The undisputed evidence showed that there were no markers prohibiting passing in the area, there was nothing to indicate a turn-off road from the highway, and no markers showing that a road left the highway anywhere in the area. The Utah Supreme Court, rather than remanding the issue for jury determination, concluded as a matter of law that this was not an intersection. Hathaway v. Marx, 21 Utah 2d 33, 439 P.2d 850 (1968), is another case in which the Utah Supreme Court faced the question of whether a juncture of two roads was an intersection. In Hathaway the evidence showed that the intersecting of the two roads was visible to oncoming traffic, that the main highway is widened to provide an extra lane for acceleration and deceleration, and that stop signs on both the east and west side warn oncoming traffic of the existence of the intersecting road. The Utah Supreme Court held that from these facts the trial court was entirely justified in regarding the crossing as an intersection within the statutory definition.
 
 
 5
 From these two cases it becomes apparent that in Utah there are two stages in the determination of whether an intersection exists for purposes of the statute making it unlawful to travel in the left-hand lane within 100 feet of an intersection. The first inquiry, clearly met in this case, is whether the two roads which form the juncture are publicly maintained as required by the statute. Finding that the road is a public road and publicly maintained, however, does not end the inquiry. It must then be determined whether the driver of the vehicle approaching the juncture would be warned that an intersection of two public roads exists. This, of course, would be a classic fact question which ordinarily would be left to the jury. While in both of the cases which address the issue the Supreme Court of Utah determined the issue and did not remand the question for submission to the jury, it seems to us that the Supreme Court was in effect concluding in the one case that a reasonable jury could not have found that the intersection was properly marked. Therefore the court directed a verdict on that issue in both cases.
 
 
 6
 The facts of the present case, however, fall between the two cases cited. This road, unlike the road in Gigandet, was visible to oncoming traffic from a considerable distance. Unlike Hathaway, however, the county road forms only a "T" intersection, and while a solid yellow line commences immediately after the intersection, it appears the line is a warning about visibility due to approaching a hill rather than a warning about the intersection. Therefore, whether a reasonable driver should have been on notice of the existence of a public intersection was sufficiently in question that the district court did not err in submitting this issue to the jury.
 
 
 7
 This resolution of the issue requires us to answer an additional issue raised by appellants: whether photographs by defendant's experts depicting his reconstruction of the accident scene were improperly admitted. This issue is not a novel issue before this court. In Brandt v. French, 638 F.2d 209 (10th Cir.1981), this court closely examined the competing interests in determining the admissibility of film reproductions of the expert's opinion, and we held that such photographs are admissible both to demonstrate mechanical principles relative to the vehicle and as a visual summary of the expert's opinion. When offered for the later purpose they are admissible within the discretion of the trial court so long as they are carefully drawn and executed and accurately represent the theory the expert proposed. Of course, it must be pointed out that the photos represent only that view of the facts which the witness is seeking to establish. This, however, was done in the present case both by the defendant's expert and by the court in its instructions to the jury. Therefore there was no abuse of discretion in the district court's admittance of these photos reconstructing the accident scene.**
 
 
 8
 The judgment of the district court is affirmed.
 
 
 9
 BALDOCK, District Judge, concurring and dissenting:
 
 
 10
 I agree with the majority's decision on the second issue concerning the admissibility of reconstruction photos. I disagree with the majority's decision on the first issue: whether the district court erred in failing to rule as a matter of law that the juncture of the two roads constitutes a statutory intersection. In concluding that the issue was a question of fact properly submitted to the jury, the majority announces new Utah law. Because I believe the majority enters the domain of the Utah State Legislature, I respectfully dissent.
 
 
 11
 The majority creates a new test for determining a "statutory" intersection: (1) whether the two roads which form the juncture are publicly maintained; and (2) whether the driver of the vehicle approaching the juncture would be warned that an intersection exists. This approach may have practical appeal: a statute which prohibits the passing within 100 feet of an intersection should not be applied if a motorist does not have notice of the existence of the intersection. The first part of the test is derived from statute. The second part of the test cannot be found in either the Utah statutes or case law. Because this "visibility test" does not appear in any decision of the Utah Supreme Court, and because the statutes defining intersection are clear and unambiguous, I believe it is improper for the federal appellate court to make and apply new law for the State of Utah.
 
 
 12
 The relevant statutory law may be summarized as follows:
 
 Utah Code Ann. Sec. 41-6-58(a)(2):
 
 13
 No vehicle shall at any time be driven on the left side of the roadway under the following conditions: ... (2) When approaching within 100 feet of ... any intersection....
 
 Utah Code Ann. Sec. 41-6-1(19)(a):
 An "intersection" is defined as:
 
 14
 The area embraced within the prolongation or connection of the lateral curblines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle come in conflict.
 
 Utah Code Ann. Sec. 41-6-1(17):
 A "highway is defined as:
 
 15
 [T]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."
 
 
 16
 Applying the statutory criteria to the facts of this case inescapably reveals an intersection as a matter of law. The evidence was uncontroverted that the roads joined at right angles and were publicly maintained. The evidence also was uncontroverted that the semi-truck was passing in the left lane within 100 feet of the intersection when the collision occurred. Nowhere in the statutes is there a requirement that the intersection be visible to the motorist or that the motorist have notice of its existence. The district court erred, therefore, when it submitted to the jury the determination of whether the collision occurred in an intersection.
 
 
 17
 A review of Douglas v. Gigandet, 8 Utah 2d 245, 332 P.2d 932 (1958) and Hathaway v. Marx, 21 Utah 2d 33, 439 P.2d 850 (1968) also fails to reveal any visibility requirement for the establishment of an intersection. In Gigandet, the Utah court determined that the trial court incorrectly found an intersection as a matter of law because a side road did not constitute a "highway" and, therefore, could not form an intersection. 332 P.2d at 933. In Hathaway, the Utah court rejected the argument that an intersection did not exist because the side road was not readily visible. Relying exclusively on the statutory definition of an intersection, the supreme court determined that the trial court could as a matter of law regard the juncture as an intersection. 439 P.2d at 851.
 
 
 18
 Although it is improper to read the "visibility test" into the statutory language, this factor will come into play as a defense. The Utah court has recognized that the "violation of a standard of safety set by statute or ordinance is to be regarded as prima facie evidence of negligence, but is subject to justification or excuse if the evidence is such that it reasonably could be found that the conduct was nevertheless within the standard of reasonable care under the circumstances." Thompson v. Ford Motor Co., 16 Utah 2d 30, 395 P.2d 62, 64 (1964). The defendant has the burden of proving excuse by a preponderance of the evidence once the violation of a safety statute has been proven by the plaintiff. Id. 395 P.2d at 65-66. The Utah court, in Hall v. Warren, 632 P.2d 848, 851 (Utah 1981), cites with approval the Restatement (Second) of Torts Sec. 288A (1965) which lists the several permissible defenses:
 
 Sec. 288A. Excused Violations
 
 19
 (1) An excused violation of a legislative enactment or an administrative regulation is not negligence.
 
 
 20
 (2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when
 
 
 21
 (a) the violation is reasonable because of the actor's incapacity;
 
 
 22
 (b) he neither knows nor should know of the occasion for compliance;
 
 
 23
 (c) he is unable after reasonable diligence or care to comply;
 
 
 24
 (d) he is confronted by an emergency not due to his own misconduct;
 
 
 25
 (e) compliance would involve a greater risk of harm to the actor or to others.
 
 
 26
 In this case, the defendants never had the opportunity to produce evidence of justification or excuse, because the plaintiffs never convinced the trial judge of a violation of the statute. Had the judge determined that the statute had been violated, the burden would have shifted to the defendants to show justification or excuse.
 
 
 27
 I believe that submitting the question of the existence of an intersection to the jury was error in light of the uncontroverted evidence which proved the existence of a statutory intersection. Accordingly, I would reverse and remand the case for a new trial.
 
 
 
 *
 Honorable Bobby R. Baldock, United States District Judge for the District of New Mexico, sitting by designation
 
 
 **
 Plaintiff's main objection to the photos appears to be that the defendant's expert did not photographically depict to the jury the events according to plaintiff's theory of the accident. This deficiency could be easily cured by plaintiff producing his own photographic depictions of the accident scene. If he desired such photographs, it was his duty to produce them